**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**ROBERT BESHAW,**

                        **Plaintiff,**

          **v.**

**MVP SERVICE CORP.,**

                        **Defendant.**
_____

**1:21-cv-584**
**(GLS/CFH)**

| APPEARANCES: | OF COUNSEL: |
|---|---|
| **FOR THE PLAINTIFF:** | |
| Law Offices of Wyatt & Associates PLLC | BENJAMIN J WYATT, ESQ. |
| 17 Elm Street Suite C211 | MICHAEL VARRASO, ESQ. |
| Keene, NH 03431 | |
| | |
| Rachel De Orio, Esq. | |
| 295 Reservoir Road | |
| Deering, NH 03431 | |
| | |
| **FOR THE DEFENDANT:** | |
| Greenberg Traurig, LLP | HENRY M. GREENBERG, ESQ. |
| 54 State Street | ZACKARY KNAUB, ESQ. |
| 6th Floor | |
| Albany, NY 12207 | |

**Gary L. Sharpe**
**Senior District Judge**

## MEMORANDUM-DECISION AND ORDER

### I.  Introduction

Plaintiff Robert Beshaw commenced this action against his former employer, defendant MVP Service Corp., alleging claims pursuant to the Americans with Disabilities Act (ADA),[1] Family and Medical Leave Act (FMLA),[2] Age Discrimination in Employment Act (ADEA),[3] and state law. (Compl., Dkt. No. 1.)  Pending is MVP's pre-answer motion to dismiss the complaint.  (Dkt. No. 7.)  For the reasons that follow, MVP's motion is denied.

## II. **Background**

### A. **Facts**[4]

At the time of commencement, Beshaw was a fifty-six-year-old man and former senior counsel in MVP's Legal Affairs Department.  (Compl. ¶¶ 1, 11.)  Beshaw was hired as associate counsel in 2014 and was later promoted to senior counsel.  (*Id.* ¶¶ 6, 11.)  In spring 2016, during a routine physical examination, Beshaw's doctor detected an atrioventricular block, and Beshaw was sent to a cardiologist for emergency observation,

---

[1] *See* 42 U.S.C. §§ 12101-213.

[2] *See* 29 U.S.C. §§ 2601-54.

[3] *See* 29 U.S.C. §§ 621-634.

[4] The facts are drawn from Beshaw's complaint, (Dkt. No. 1), and presented in the light most favorable to him.

2

assessment, and specialty care, of which Beshaw immediately notified Deputy General Counsel, Emily Titsworth.  (*Id.* ¶¶ 12-13.)  More than two years later, in 2018, Beshaw began feeling lightheaded and experiencing cardiac discomfort while at work.  (*Id.* ¶ 15.)  In light of these symptoms Beshaw left work early to go to the hospital and informed Titsworth's executive assistant that he was doing so.  (*Id.* ¶ 16.)

Beshaw was diagnosed with pulmonary and cardiac sarcoidosis, "a serious medical condition in which white blood cells irregularly clump together causing damage to vital organs such as the lungs and heart," which limits Beshaw's ability to breathe and engage in physical activity. (*Id.* ¶¶ 17-18.)  Additionally, Beshaw was informed that he would need to undergo surgery to install a defibrillator and pacemaker as well as receive "ongoing specialized future medical care."  (*Id.* ¶ 22.)  Beshaw disclosed to Titsworth that he would need to undergo a surgical procedure and future treatment related to his cardiac sarcoidosis and requested one week of FMLA leave in order to have, and recover from, the surgery, as well as to undergo further testing.  (*Id.* ¶¶ 22-24.)  This FMLA request was approved and Beshaw underwent surgery in late summer 2018.  (*Id.* ¶ 29.)  Both Beshaw's doctors and MVP recommended a health management plan for

3

Beshaw, which included exercising regularly and avoiding long periods of sitting.  (*Id.* ¶ 30.)

In spring 2019, MVP hired Monica Barbero as general counsel, to whom all legal staff, including Beshaw and Titsworth, reported.  (*Id.* ¶ 35.) Shortly after Barbero was hired, Beshaw's doctor advised him that his ongoing treatment was not sufficient in managing his condition and that, without further treatment, Beshaw was at risk of serious health issues "including heart failure, heart attack, sarcoid spread to other organs, other serious sarcoid symptoms, and serious health effects from long-term high dosage prednisone and other medications."  (*Id.* ¶ 38.)   Beshaw's doctor recommended that he begin Remicade treatment to minimize these risks. (*Id.* ¶ 39.)  Around August 2019, Beshaw requested periodic half-day absences from work to undergo Remicade treatment.  (*Id.* ¶ 43.)  This treatment required two sessions in the first month, and one session every six weeks for the duration of Beshaw's life, or until deemed no longer necessary.  (*Id.* ¶ 65.)  As both Beshaw's employer and health insurer, MVP needed to pre-approve the Remicade treatment and Beshaw's request for periodic half-day absences, which they denied.  (*Id.* ¶¶ 43, 45.) Around this time, Beshaw asserts that, on separate occasions, Barbero

4

and Titsworth each told Beshaw that the Legal Affairs Department would benefit from hiring younger attorneys.  (*Id.* ¶ 40.)

In March 2020, Beshaw's application for the Remicade treatment was eventually approved and, in May 2020, he again requested the periodic half-day absences.  (*Id.* ¶¶ 47-48, 68.)  This request was approved and Beshaw took half-day absences on June 5, June 19, July 3, and August 13, 2020 to undergo treatment.  (*Id.* ¶¶ 71-74.)  After he requested to undergo the Remicade treatment, Beshaw reports that Titsworth and Barbero "were more critical of [] Beshaw" and were unwilling to work "openly, collegially and collaboratively" with him.  (*Id.* ¶¶ 52-54, 76.)  And, shortly after he requested permission to take the periodic half-day absences in May 2020, MVP began interviewing for a new counsel to join the Legal Affairs Department.  (*Id.* ¶ 69.)

On August 19, 2020, Beshaw met with Titsworth and a representative from MVP's Human Resources Department.  (*Id.* ¶ 78.)  At the meeting Beshaw was informed that MVP had eliminated his position due to "functional reorganization" and that he was being terminated.  (*Id.*  ¶ 79.)  At this time MVP "did not eliminate the positions of, or otherwise lay off, other similarly situated younger []or non-disabled employees" and replaced

5

Beshaw with a less qualified, younger, and non-disabled individual.  (*Id.* ¶¶ 81-83.)

### III.  <u>Standard of Review</u>

The standard of review under Fed. R. Civ. P. 12(b)(6) is well settled and will not be repeated here.  For a full discussion of the governing standard, the court refers the parties to its prior decision in *Ellis v. Cohen & Slamowitz, LLP*, 701 F. Supp. 2d 215, 218 (N.D.N.Y. 2010), *abrogated on other grounds by Altman v. J.C. Christensen & Assocs., Inc.*, 786 F.3d 191 (2d Cir. 2015).

### IV.  <u>Discussion</u>

As a preliminary matter, although MVP seeks dismissal of the complaint in its entirety, it has not made any argument for dismissal of Beshaw's retaliation claims under the ADA and the ADEA.  (*See generally* Dkt. No. 7, Attach. 1.)  Because MVP has made no arguments in support of dismissing these claims, MVP's motion is necessarily denied with respect to retaliation under the ADA and the ADEA.

**A.    Disability Discrimination[5] and Failure to Accommodate**

MVP argues that Beshaw has failed to state a prima facie case under the ADA because he has not sufficiently alleged that he suffers from a disability within the meaning of the ADA.  (Dkt. No. 7, Attach. 1 at 7-10.) Specifically, MVP asserts that, while Beshaw alleges that he was diagnosed with cardiac and pulmonary sarcoidosis, he does not articulate how that condition substantially limits any major life activity.  (*Id.* at 8-9.) Additionally, MVP argues that all of Beshaw's requests for accommodation were granted.  (*Id.*)  Beshaw contends that he has pleaded facts sufficient to establish a prima facie case for disability discrimination because he alleged that his  pulmonary and cardiac sarcoidosis "substantially limits . . . his major life activities, including . . . breathing and engaging in physical activity without breaks" and substantially limits his circulatory and respiratory functions.  (Dkt. No. 8, Attach. 1 at 7-8; Compl. ¶ 18.) Additionally, Beshaw contends that the ADA did not intend for this element

---

[5]  Beshaw alleges disability discrimination in violation of both the ADA and New York Human Rights Law.  (Compl. ¶¶ 97-112.)  Because these causes of action are analyzed under the same standard, they are addressed together.  *See Graves v. Finch Pruyn & Co.*, 457 F.3d 181, 184 n.3 (2d Cir. 2006) ("A claim of disability discrimination under New York State Human Rights Law is governed by the same legal standards as govern federal ADA claims.") (internal citations omitted).

to be a demanding standard and that courts in this Circuit have regularly construe the phrase "substantially limits" broadly in favor of finding a disability.  (*Id.* at 7.)  Beshaw also argues that MVP initially denied his accommodation request for leave to undergo Remicade treatment in August 2019, which was only approved months later, in March 2020, when an independent third-party overturned MVP's denial.  (Dkt. No. 8, Attach. 1 at 3; Compl. ¶¶ 43-45, 47, 63.)

To set forth a prima facie case of disability discrimination, a plaintiff must demonstrate that "(1) his employer is subject to the ADA; (2) he was disabled within the meaning of the ADA; (3) he was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) he suffered [an] adverse employment action because of his disability." *Piligian v. Icahn Sch. of Med. at Mount Sinai*, 490 F. Supp. 3d 707, 716-17 (S.D.N.Y. 2020) (internal quotation marks and citation omitted).  A disability within the meaning of the ADA includes "a physical or mental impairment that substantially limits one or more major life activities of such individual."  42 U.S.C. § 12102(1).  "[M]ajor life activities include, but are not limited to . . . performing manual tasks, . . . walking, . . . lifting, . . . [and] breathing." *Id.* § 12102(2)(A).  In addition, a

8

major life activity includes "the operation of a major bodily function, including but not limited to, respiratory [and] circulatory" functions. *Id.* § 12102(2)(B). "An impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting." 29 C.F.R. § 1630.2(j)(1)(ii).

An employer may also be liable under the ADA where it fails to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." 42 U.S.C. § 12112(b)(5)(A); *see McBride v. BIC Consumer Prod. Mfg. Co.*, 583 F.3d 92, 96 (2d Cir. 2009). To make a prima facie showing of an employer's failure to accommodate, a plaintiff must establish that

> "(1) plaintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations."

*Rodal v. Anesthesia Grp. of Onondaga, P.C.*, 369 F.3d 113, 118 (2d Cir. 2004). Constructive failure to accommodate can be demonstrated when an employer delays in granting an accommodation, and the delay is motivated by the employer's discriminatory intent, as opposed to mere negligence. *See Logan v. Matveevskii*, 57 F. Supp. 3d 234, 257 (S.D.N.Y.

9

2014).

Here, Beshaw asserts facts sufficient to make out a prima facie case for disability discrimination.  Beshaw alleges that his diagnosis limits his ability to breathe and engage in physical activity without breaks and that he must avoid sitting for long periods of time.  (Compl. ¶¶ 18, 30.)  Drawing all inferences in Beshaw's favor, because Beshaw alleges that his pulmonary and cardiac sarcoidosis limits his ability to breath and sit and the term "substantially limits" was intended to be "construed broadly in favor of expansive coverage," *Parada v. Banco Industrial v. De Venezuela, C.A.*, 753 F.3d 62, 69, n.3 (2d Cir. 2014), MVP's motion with respect to Beshaw's claims for disability discrimination under the ADA and New York state law is denied, *see* 29 C.R.F. § 1630.2(j)(1)(i); *Urena v. Swiss Post Solutions, Inc.*, 16 Civ. 1998, 2016 WL 5173389 at * 5 (S.D.N.Y. Sept. 21, 2016) (finding that, where the plaintiff alleged that she could not stand or sit for prolonged periods, or lift heavy objects, the complaint sufficiently pleaded that her impairment was substantially limiting).

Additionally, MVP's motion is denied with respect to Beshaw's claim for failure to accommodate.  Apart from asserting that Beshaw has not alleged a disability within the meaning of the ADA*,* MVP's entire argument

10

with respect to Beshaw's failure to accommodate claim consists of one sentence, "the only accommodation [Beshaw] requested was time off work, and all those requests were granted."  (Dkt. No. 7, Attach. 1 at 8-9.)  MVP provides no legal support for its contention that denying Beshaw's initial request for time off does not constitute a denial of a reasonable accommodation nor does MVP argue that the denial of the requested time off to undergo Remicade treatment, which was approved six months later, was not constructive denial.  Beshaw has asserted facts sufficient to show MVP failed to accommodate his request.  Beshaw alleges that MVP initially denied his request for periodic half-days off to undergo Remiciade treatment in August 2019, and that his request was only approved after an independent third-party overturned MVP's denial over six months later. (Compl. 43-45, 47, 63.)  The facts alleged in the complaint show that Beshaw requested an accommodation, MVP denied that request, and Beshaw went without his requested accommodation for over six months. Thus, MVP's motion to dismiss with respect to Beshaw's claim for failure to accommodate claim is denied.  *See Price v. City of New York*, 797 F. Supp. 2d 219, 228, n. 9 (E.D.N.Y. June 22, 2011) (denying the defendant's motion to dismiss a claim for failure to accommodate where the plaintiff

alleges defendant initially denied his requested accommodation and the

defendant's motion only briefly references plaintiff's failure to

accommodate claim).

**B.    Age Discrimination**[6]

MVP contends that Beshaw has failed to allege facts that give rise to

an inference of discrimination with respect to his claim for age

discrimination under the ADEA.  (Dkt. No 7, Attach. 1 at 10-12.)

Specifically, MVP argues that the statements from Barbero and Titsworth

about how the legal affairs department could benefit from hiring younger

counsel were not discriminatory and were "stray remarks" spoken more

than a year before Beshaw's termination.  (*Id.* at 11-12.)  Beshaw

maintains that these statements are more than mere "stray remarks" as

they were spoken by the decision-makers in his termination.  (Dkt. No. 9,

Attach. 1 at 12.)  Additionally, Beshaw asserts that, without considering the

statements from Barbero and Titsworth, he has still demonstrated an

inference of discrimination because he was the oldest senior counsel, the

---

[6]   Beshaw alleges disability discrimination in violation of both the ADEA and New York Human Rights Law.  (Compl. ¶¶ 137-44.)  Because these causes of action are analyzed under the same standard, they are addressed together.  *See Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 106 n.6 (2d Cir. 2010).

only senior counsel who's position was eliminated while other senior counsel with less seniority were retained, and was replaced by someone younger and with less experience than him. (*Id.* at 10-11.)

In order to establish a prima facie case of age discrimination, Beshaw must show "(1) that [he] was within the protected age group, (2) that [he] was qualified for the position, (3) that [he] experienced adverse employment action, and (4) that such action occurred under circumstances giving rise to an inference of discrimination." *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 107 (2d Cir. 2010). To show that the circumstances surrounding an adverse employment action give rise to an inference of discrimination, the plaintiff may point to, among other things, remarks made by the employer which reflect a discriminatory animus as well as the treatment of similarly situated younger employees. *See Williams v. PMA Companies Inc.*, 564 F. Supp. 3d 32, 50 (N.D.N.Y. Sept. 30, 2021); *Hamilton v. Mount Sinai Hosp.*, 528 F. Supp. 431, 446 (S.D.N.Y. Dec. 20, 2007).

While Barbero and Titsworth's statements were made over a year before Beshaw's termination, (Compl. ¶ 37, 40), and are thus far too remote on their own to give rise to an inference of discrimination, *see*

13

*Lively v. WAFRA Investment Advisory Group*, 6 F.4th 293, 306-07 (2d Cir. 2021), Beshaw has nonetheless alleged facts that give rise to an inference of discrimination.  Specifically, Beshaw alleges that he was the oldest senior counsel and the only senior counsel who's position was eliminated, while younger senior counsel's positions were not, and that he was replaced by a younger individual.[7]  (Compl. ¶¶ 41, 81-84); *see D'Cunha v. Genovese/Eckerd Corp.*, 479 F.3d 193, 195 (2d Cir. 2007) (finding that a forty-nine-year-old rejected for job that was offered to individual eight years younger was sufficient to support an inference of discrimination); *Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716-17 (2d Cir.1994) (finding that, among other factors, where a fifty-seven-year-old was replaced within one year of his termination following a "company-wide reduction," can support an inference of discrimination).  Accordingly, MVP's motion with respect to Beshaw's claim for age discrimination is denied.

## C.   __FMLA Interference__

MVP argues dismissal of Beshaw's claim for interference with his FMLA rights is proper because Beshaw "repeatedly concedes that his

---

[7]  MVP asserts that no one has been hired to fill Beshaw's position and that he was not been replaced, however, this fact is outside of the complaint and the court will not consider it. *See* Fed. R. Civ. P. 12(b); *see also Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006).

requests for leave were granted" and, thus, cannot establish a prima facie case for FMLA interference.  (Dkt. No. 7, Attach. 1 at 16.)  Beshaw contends that, in addition to Barbero and Titsworth being critical of Beshaw's requests for leave and ceasing communications with him in March 2020, MVP denied his initial request for leave to undergo Remicade treatment, which is sufficient to establish a prima facie case.  (Dkt. No. 9, Attach 1 at 17-18.)

To survive a motion to dismiss for interference with rights under the FMLA, a plaintiff must allege:

> 1) that []he is an eligible employee under the FMLA; 2) that the defendant is an employer as defined by the FMLA; 3) that []he was entitled to take leave under the FMLA; 4) that []he gave notice to the defendant of h[is] intention to take leave; and 5) that []he was denied benefits to which [he] was entitled under the FMLA.

*Schultz v. Congregation Shearith Israel of the City of N.Y.*, 867 F.3d 298, 307 (2d Cir. 2017) (citation omitted).

MVP's assertion that Beshaw "repeatedly concedes that his requests for leave were granted," (Dkt. No. 7, Attach. 1 at 16), ignores Beshaw's allegation that his request was denied and points to no legal support to counter Beshaw's allegation that the initial denial of his requested leave is

15

insufficient to establish a prima facie case.[8]  Here, Beshaw plainly alleges

that MVP denied his request for leave in August 2019, and, because of this

denial, he did not take his requested absences from work to undergo the

treatment until it was approved months later.  (Compl. ¶¶ 43-46.)

Accordingly, MVP's motion is denied with respect to Beshaw's FMLA

interference claim.[9]  *See Graziadio v. Culinary Inst. of Am.*, 817 F.3d 415,

426 (2d Cir. 2016) (finding that plaintiff's FMLA interference claim survives

a motion for summary judgment where the plaintiff has demonstrated that

she was entitled to take leave, that she attempted to take leave, and that

her employer refused to approve that leave); *Dudley v. N.Y.C. Housing*

*Authority*, 14 Civ. 5116 2017, WL 4315010, at * 23 (S.D.N.Y. Sept. 25,

2017) (discussing that a plaintiff can establish a case for FMLA

interference if he has been temporarily denied FMLA leave and did not

---

[8]  MVP cites to *Lievre v. JRM Constr. Mgmt., LLC* as support, arguing that "where a plaintiff concedes that []he was granted the leave requested, the FMLA interference claim fails," (Dkt. No. 7, Attach. 1 at 16), however, *Lievre* did not involve, as here, an allegation that an initial request was denied. *See* 17-cv-4439, 2019 WL 457277 (S.D.N.Y. Sept. 20, 2019).

[9]  To the extent Beshaw seeks to pursue this claim on a "discouragement theory," he has not alleged sufficient facts to support that MVP's action would have dissuaded a similarly situated employee . . . from attempting to exercise his . . . FMLA right." *See Reilly v. Revlon, Inc.*, 620 F. Supp. 2d 524, 535 (S.D.N.Y. May 12, 2009).  Although Beshaw alleges that Barbero and Titsworth were "critical" of his requests for leave, (Compl.¶ 76), he does not specify how they were critical and it is impossible for the court to determine whether these criticisms would have dissuaded a similarly situated employee from exercising their FMLA rights.

take leave because he lacked approval).

**D.    FMLA Retaliation**

MVP asserts that Beshaw's claim for FMLA retaliation must be dismissed because his claim relies entirely on temporal proximity and the same is insufficient on its own to give rise to an inference of retaliation. (Dkt. No. 7, Attach 1 at 13-14.)  Beshaw contends that the temporal proximity between him exercising his rights under the FMLA beginning in June 2020 and his termination on August 19, 2020 is sufficient to give rise to an inference of discrimination.  (Dkt. No. 9, Attach. 1 at 14.)

To establish a prima facie case of FMLA retaliation, a plaintiff must show "that (1) he exercised rights protected under the FMLA, (2) he was qualified for his position, (3) he suffered an adverse employment action, and (4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent." *Donnelly v. Greenburgh Cent. Sch. Dist. No. 7*, 691 F.3d 134, 147 (2d Cir. 2012) (internal quotation marks and citations omitted).  A plaintiff can indirectly establish a causal connection to support a retaliation claim by showing that the protected activity was closely followed in time by the adverse employment action. *See Bowman v. CSX Transp., Inc.*, 22 3d 181, 192 (N.D.N.Y. May 22,

2014).

The court agrees with Beshaw. MVP incorrectly asserts that temporal proximity is insufficient to sustain a cause of action for FMLA retaliation, as the case law MVP relies on demonstrates that temporal proximity is insufficient on its own where the plaintiff was already subject to gradual adverse actions before he or she engaged in protected activity. *See Telesford v. N.Y.C. Dep't of Educ.*, No. 16-cv-819, 2021 WL 456201, at *4 (E.D.N.Y. Jan. 6, 2021). There is no indication here that Beshaw was subject to any gradual adverse actions before he availed himself of FMLA leave. Beshaw notified MVP in May 2020 that he would be taking leave, and he took half-days off on June 5, June 19, July 3, and August 13, 2020 to undergo Remicade treatment. (Compl. ¶¶ 71-74.) Beshaw was terminated on August 19, 2020, less that three months after he began utilizing his leave and less than a week after his most recent half-day leave. (*Id.* ¶¶ 71-74, 80.) The temporal proximity between the beginning of his leave and his termination is sufficient, at this juncture, to give rise to an inference of retaliation. *Gorzynski*, 596 F.3d at 110 ("Though this Court has not drawn a bright line defining, for the purposes of a prima facie case, the outer limits beyond which a temporal relationship is too attenuated to

18

establish causation, we have previously held that five months is not too long to find the causal relationship.") (citation omitted).[10]  Accordingly, MVP's motion with respect to Beshaw's claim for FMLA retaliation is also denied.

## V.  Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that MVP's motion to dismiss (Dkt. No. 7) is **DENIED**; and it is further

**ORDERED** that the parties shall contact Magistrate Judge Christian F. Hummel to schedule further proceedings; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

September 7, 2022
Albany, New York

Gary L. Sharpe
Gary L. Sharpe
U.S. District Judge

---

[10]  Although *Gorzynski* dealt with claims under the ADA, the analysis for retaliation under the ADA is applicable to retaliation claims under the FMLA.  *See Potenza v. City of New York*, 365 F.3d 165, 168 (2d Cir. 2004); *see also Hewett v. Triple Point Technology, Inc.*, 171 F. Supp. 3d 10, 19 (D. Conn. Mar. 16, 2016).